THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee,
*v.* FÉLIX ECHEVARRÍA, Defendant and Appellant.

No. Cr–62–228.  Decided February 4, 1963.

*Guillermo Bauzá* and *Santiago Polanco Abreu* for appellant.
*J. B. Fernández Badillo, Solicitor General,* and *Juan A. Faría,
Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of
Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

There is no question that at the time of the collision we must presume that defendant was driving his automobile under the influence of intoxicating liquor. The analysis showed 0.17 per cent by weight of alcohol in the blood and 0.22 by weight of alcohol in the urine. The testimony of the owner of the damaged automobile established that defendant was under the influence of intoxicating liquor at the time of the collision. Defendant's defense in the sense that he started to drink after the collision is so contrary to the normal course of human conduct that the trial court did not give it any credit. To a certain extent this case presents a situa-

tion contrary to that which we examined in *People* v. *Hernández*, 86 P.R.R. 753, 756 (Belaval, 1962). In the *Hernández* case the result of the chemical analysis of the urine was 0.13 per cent, and we held that pursuant to § 5-801(b) of Act No. 141 of July 20, 1960 (Sess. Laws, p. 408), if the result of the analysis was less than 0.15 per cent, there is no inference of defendant's guilt for driving an automobile under the influence of intoxicating liquor, in the absence of other competent evidence. In such case the presumption is favorable to defendant. However, where the analysis shows a certain weight in grams of alcohol over 0.15 per cent, after the corresponding distilling, the presumption established by § 5-801 (b) (3) is adverse to defendant.

The two errors assigned by appellant refer, the first, to certain irregularities in remitting the samples to the Department of Health, in violation of the regulations adopted to that effect, and to the insufficiency of the evidence on the reasonable grounds which the public peace officer had for requiring defendant to have a sample of blood or urine taken.

1. The authority to promulgate regulations is granted to the Secretary of Health by § 5-803 of Act No. 141 of July 20, 1960 which provides: "(d) The Secretary of Health is hereby empowered to regulate the manner in which and the places where the blood smears and urine samples are to be taken, bottled and analyzed, as well as the other proceedings related to the chemical analysis, but subject to the provisions of subsections (f), (g) and (h) of this section.

"The Secretary of Health is likewise empowered to adopt and regulate the use of the alcoholometer, intoximeter or any other scientific devices or instruments he may deem necessary so as to determine, through breath analysis, the percentage of alcoholic concentration in the blood of drivers charged with driving or operating motor vehicles under the influence of intoxicating liquor.

"(e) Hospitals and other Commonwealth and municipal public health services and the personnel thereof shall be subject to the rules and regulations promulgated under authority of subsection (d) of this section by the Secretary of Health.

"(f) All blood smears or urine samples shall be divided into three portions: One shall be delivered to the person arrested so that he may have it analyzed by a chemist of his choice, if he so desires, and the other two shall be kept for the use of the Department of Health; one to be used in the chemical analysis required under this section, and the other to be kept for analysis only by direction of the court in case of discrepancy between the official analysis and the analysis privately made by order of the defendant.

"(g) Only a physician, registered nurse or minor surgeon, acting upon petition of a peace officer or a judge, may take blood smears for determining its alcoholic content.

"(h) Copy of the result of the chemical analysis of the defendant's breath, urine or blood, as the case may be, shall be sent to the office of the Secretary of the District Court for the district where the events occurred, to be added to the record of the case. Copy of the result of the chemical analysis shall be sent to defendant at his request."

The regulations promulgated by virtue of this authorization, extracted in the parts pertinent to the error assigned, provide as follows:

"§ 1043-3.—Reporting blanks

Each blood or urine sample shall be accompanied by a reporting blank furnished by the Department of Health and which shall be filled completely in quadruplicate and signed by the person who collects the sample in such a manner that each copy contains exactly the same information.

"§ 1043-4.—Packing and sending of samples to the Department of Health

Two of the vials containing portions of the blood or urine samples shall be placed in an appropriate container and sent to the laboratories of the Department of Health within the 12 hours following the collecting of the samples, by the person who collected the sample or, in his default, by the director or executive of the state or municipal hospital or health center. The name and address of the sender shall be written on the label for address.

"§ 1043-5.—Delivery of a sample portion to the person from whom the sample was taken

The third portion of the blood or urine sample and the third copy of the reporting blank shall be given to the subject or person from whom the sample was taken, or to any relative or friend accompanying him, in case the subject refuses to accept it or his physical condition prevents him from doing so. The person who receives the third portion of the sample shall sign the reporting blank with all its copies acknowledging the receipt of the sample." 9 Rules and Regulations of the Commonwealth of Puerto Rico 308.7-308.8, §§ 1043-3, 1043-4, 1043-5.

■■ Defendant alleges that the provisions of § 1043-3 of the Regulations were not followed in the reporting blank of the sample because in the square in which the name of the physician should appear only the letters B. A. appear, and therefore, "the continuity which should exist in cases of the nature of the present case was not established." The evidence shows clearly that the sample was collected in the presence of the medical witness, Dr. Roque Barrios Mariano, who was on duty in the municipal hospital of Río Piedras on the evening of September 17, 1960, and after defendant emitted the urine the witness emptied the contents in three vials which are hermetically closed, and delivered one vial to defendant and the others were sent to the hospital superintendent, who is the person in charge of mailing them to the

chemical laboratory of the Department of Health. On the other hand, Olga Josefa Díaz, Department of Health chemist, testified that the sample of defendant's urine was received in the department on September 22 and analyzed by her on October 7, with the result already indicated. Assuming that the sample was sent later than the twelve hours prescribed by the Regulations for sending the same, there is nothing in the evidence to indicate that the sample collected is altered by the time elapsed between the taking and the delivery to the Department of Health. Although good administrative practice requires full compliance with the regulations, any violation thereof can not constitute a defense for defendant unless it is shown that there was an actual error in the identification of the sample or an alteration of the chemical composition which may alter the result of the analysis. Furthermore, since the regularity of the procedures is a presumption established by law, defendant is bound to prove any prejudicial deviation from the regulatory procedure.

Defendant also complains of the description made in the list of witnesses of the medical witness as: "The physician who took the sample of urine No. 391 from Félix Echevarría on September 17, 1960, in the municipal hospital of Río Piedras, P. R.," instead of identifying him by his name. It is alleged that such inaccurate inclusion is "a violation of defendant's right to be informed of the witnesses who will be used against him." The inclusion is sufficient notice of the person described, and we believe that defendant would not have had any difficulty in knowing to whom it referred because it was a fact within his own knowledge. According to the rule of liberality consecrated in our case law as to the use of witnesses not mentioned on the back of the information, we believe there is no merit in the contention.

The second error raises the illegality of the arrest on the ground that it was carried out at the instance of the party aggrieved in the collision and not because, in accord-

202

ance with § 5–803 of Act No. 141 of July 20, 1960, the public peace officer had reasonable grounds to believe that defendant was operating a vehicle under the influence of intoxicating liquor. However, the insular police sergeant in charge of supervising the traffic in the metropolitan area testified that he noticed that defendant smelled strongly of liquor and his eyes were slightly dilated: "I asked him if he consented to have a sample of blood or urine taken and he did voluntarily; he consented on condition, that is, he told us that he had had a few drinks after the collision, and we went to the municipal hospital of Río Piedras where he also consented to have a urine sample taken, which was done in my presence and that of the doctor" (Tr. Ev. 26). Any insufficiency in the description of the state of drunkenness is buttressed by defendant's own admission that he had had some drinks, although after the collision. Although it is true that another public peace officer testified that it was because of the insistence of the owner of the damaged car that the latter agent had noticed that defendant smelled of liquor, we do not believe that such circumstance should be isolated from the rest of the evidence to conclude that the public peace officers had no reasonable grounds to infer that defendant was driving his automobile while in a state of drunkenness.

The judgment will be affirmed.